IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

AUG 21 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

PATRICIA GYETVAY,

    **Plaintiff,**

v.                                                                                            **CIVIL ACTION NO. 4:20-cv-78**

ROBIN HOOPER,

WILLIAM HOOPER,

and

WILLIAMS WHARF OYSTER COMPANY, LLC,

    **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Robin Hooper, William Hooper, and Williams Wharf Oyster Company, LLC's (collectively, "Defendants") Motion to Dismiss. ECF Nos. 10–11.

### I. FACTUAL AND PROCEDURAL HISTORY

The following facts alleged in the Complaint are accepted as true. Robin Hooper ("Ms. Hooper") and William Hooper ("Mr. Hooper") are spouses and founding members of Williams Wharf Oyster Company, LLC ("Williams Wharf"), a Virginia oyster farming and distribution business. Prior to the instant suit, Ms. Hooper had a longstanding relationship with Patricia Gyetvay ("Ms. Gyetvay") and Ms. Gyetvay was an investor in Williams Wharf. In August 2019, Mr. and Ms. Hooper told Ms. Gyetvay of their desire to cultivate and sell wild oysters in India and asked Ms. Gyetvay to invest in an Indian subsidiary of Williams Wharf ("the India Venture" or "the Williams Wharf Indian subsidiary"). On September 9, 2019, Mr. and Ms. Hooper sent Ms. Gyetvay a document entitled "India Oyster Farm Project Participation" ("the Participation

Form"). The Participation Form purported to offer a 5% stake in the India Venture once it was incorporated, a seat on the board of directors, and a two to one return on investment within 30 months, in exchange for $150,000. The Participation Form also promised repayment of any investment within 24 months if the India Venture failed. Ms. Gyetvay signed the Participation Form on the same day. Shortly afterward, Ms. Hooper urged Ms. Gyetvay to send money in support of the India Venture. Mr. and Ms. Hooper also travelled to India from sometime in September 2019 through the following month. During the Hoopers' trip to India, Ms. Hooper's solicitation of funds to Ms. Gyetvay intensified, along with her assurances that the India Venture would be successful. In response, Ms. Gyetvay wired a total of $150,000 into a Williams Wharf Bank account over three transactions: (1) $30,000 on September 17, 2019; (2) $45,000 on October 1, 2019; and (3) and $75,000 on October 8, 2019.

Around November 22, 2019, authorities charged Mr. Hooper with multiple serious felony offenses. Unbeknownst to Ms. Gyetvay, Mr. Hooper was already a convicted felon before he was indicted on the federal charges that remain pending against him. On November 24, 2019, Ms. Gyetvay demanded the return of the $150,000 she previously wired to the Williams Wharf account. For the next several months, Mr. and Ms. Hooper deflected when Ms. Gyetvay made overtures about the status of her investment in the India Venture and Ms. Gyetvay never received any ownership interest in a Williams Wharf Indian subsidiary, as outlined in the Participation Form. In January 2020, Ms. Hooper told Ms. Gyetvay that the India Venture had failed, and that no Williams Wharf Indian subsidiary had ever been set up under the laws of India. The Complaint alleges that Mr. and Ms. Hooper and Williams Wharf cannot account for Ms. Gyetvay's investment in the India Venture or explain how her $150,000 was used and refuse to return the money despite her demands.

Ms. Gyetvay filed her Complaint on May 28, 2020. ECF No. 1. On June 24, 2020, Defendants filed their Motion to Dismiss. ECF No. 10–11. Ms. Gyetvay responded in opposition to Defendants' Motion to Dismiss on July 7, 2020. ECF No. 13. On July 13, 2020, Defendants replied to Ms. Gyetvay's response. ECF No. 14. The parties requested oral argument on this matter on August 17, 2020. ECF No. 15. After reviewing the filings, the Court finds that oral argument is unnecessary and this matter is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court ("Supreme Court") has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

The Complaint advances the following grounds for relief: Count I, Fraud, against Ms. Hooper pursuant to Virginia common law; Count II, Constructive Fraud (pled in the alternative

3

to Count I), against Ms. Hooper pursuant to Virginia common law; Count III, Fraud by Omission or Concealment, against Mr. and Ms. Hooper pursuant to Virginia common law; Count IV, Conversion, against all Defendants pursuant to Virginia common law; Count V, Unjust Enrichment, against all Defendants pursuant to Virginia common law; Count VI, Securities Fraud, against all Defendants pursuant to Va. Code §§ 13.1-502 and 13.1-522. Ms. Gyetvay seeks a collective judgment on all counts against the Defendants for her $150,000 investment, the associated wire and transfer fees, $350,000 of punitive damages on Counts I, III, and IV, and attorneys fees and costs.

### A. The Participation Form

Before proceeding to the substantive counts in the Complaint, the Court will address the legal significance of the Participation Form. The Complaint includes the Participation Form as an exhibit informing the factual allegations within the Complaint. ECF No. 1-3. In response, Defendants contend that the Participation Form is a contract that governs the terms of Ms. Gyetvay's $150,000 investment in the India Venture and assert the source duty rule in defense against several counts of the Complaint. In simple terms, the question is whether the Participation Form is properly understood as an instrument of the alleged tortious conduct or a valid contract.

The basic elements of a contract are offer, acceptance, and consideration. *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995). "The major consideration underlying contract law is the protection of bargained for expectations." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). There must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract. *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981). A court should not determine contractual terms upon

which the parties might ultimately agree. *Id.* An agreement to contract or negotiate at a later date, without specifying more, is not a contract. *Id.* at 818.

A cursory examination of The Participation Form shows that it is not a valid contract. The contents of the Participation Form did not bind Ms. Gyetvay, the Hoopers, or Williams Wharf to any specific terms. More specifically, the Participation Form did not obligate Ms. Gyetvay to purchase any shares in the India Venture once it was properly established, nor did it obligate any of the Defendants to sell Ms. Gyetvay any shares in the same. *See* ECF No. 1-3 at 1 ("[Williams Wharf] is accepting limited participation *offers* from select individuals") (emphasis added). Further, the Participation Agreement referred to itself as the agreement or the participation agreement, but also referred to a contract that would presumably outline the specific terms of an investment in the India Venture. *Id.* at 2. Most tellingly, the Participation Agreement explicitly stated that "all…subsequent discussions [shall] be conducted in accordance [with the] laws of the Commonwealth of Virginia," indicating that a final agreement on the purchase of Williams Wharf Indian subsidiary shares was not in order. *Id.* Because the Court cannot ascertain the number of shares Ms. Gyetvay was supposedly obligated to buy and the total price of her supposed purchase of shares from the Participation Form, that document cannot be understood as a contract. The Participation Form was simply an agreement to agree on Ms. Gyetvay's future purchase of shares in the Williams Wharf Indian subsidiary, an entity that did not exist at the time she signed the Participation Form. While the Participation Form did not preclude the parties from forming an agreement on the purchase of an ownership interest at a later date, it is not a contract standing alone. Accordingly, Defendants may not assert the source duty rule in defending against Counts I–IV.

## B. The Fraud Claim

Count I alleges that Ms. Hooper used Williams Wharf to defraud Ms. Hooper out of a $150,000 investment in an Indian subsidiary that never came to exist. The parties disagree on whether the Complaint states sufficient facts to sustain a fraud claim and whether the Williams Wharf corporate veil protects Ms. Hooper from liability.

*1. The Adequacy of the Fraud Pleading Against Ms. Hooper*

Under Virginia law, the elements of fraud are as follows: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005). In order to avoid transforming every breach of contract claim into a fraud claim, courts must identify the source of the duty violated to distinguish whether a cause of action sounds in contract or tort. *Richmond Metro. Auth., Inc. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998). If a duty breached exists solely by virtue of a contract, without a common law duty, then there can be no fraud claim. *Id.* Fraud claims "must relate to present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble v. Herman*, 9 S.E.2d 459, 464 (Va. 1940). However, there is an exception in the case of fraudulent inducement, when a defendant makes a promise that he or she has no intention of performing. *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008). In such a case, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud. *Id.*

Here, there is no duty arising from a contract or the common law. *See supra* Part III.A (holding that the Participation Form is not a contract). However, the Complaint properly advances allegations of fraudulent inducement. The Complaint alleges that Ms. Hooper made the

6

following knowing and intentional misrepresentations to Ms. Gyetvay before Ms. Gyetvay relied on the same misrepresentations and wired a total of $150,000 into the Williams Wharf bank account: (1) the Williams Wharf Indian subsidiary would be formed as a legal entity within a week of September 10, 2019; (2) Ms. Gyetvay would get her money back, either with a two to one return on investment if the Williams Wharf Indian subsidiary succeeded or a refund of her investment if it failed; (3) Ms. Gyetvay's funds were needed to show the viability of the India Venture after she had already wired a portion of the $150,000. *See* ECF No. 1 at ¶ 72. The foregoing allegations, in combination with the allegation that the Williams Wharf Indian subsidiary was never formed as a legal entity or otherwise organized, support the conclusion that Ms. Hooper never intended to set up an Indian subsidiary of Williams Wharf or to use Ms. Gyetvay's money in support of that endeavor. *See id.* at ¶ 74, 76. In other words, the allegations in the Complaint adequately allege that Ms. Hooper intended to defraud Ms. Gyetvay by using Williams Wharf to misappropriate Ms. Gyetvay's money for some purpose unrelated to an Indian subsidiary of Williams Wharf.

*2. The Corporate Veil Issue*

Stockholder immunity is generally applicable to LLCs and the decision to pierce the corporate veil to impose individual liability "is an extraordinary act to be taken only when necessary to promote justice." *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003) *quoting C.F. Tr., Inc. v. First Flight Ltd. P'Ship*, 580 S.E.2d 806, 809 (Va. 2003). There is no single rule or criterion used to determine whether piercing the corporate veil is justified. *O'Hazza v. Exec. Credit Corp.*, 431 S.E.2d 318, 320 (Va. 1993). Piercing the corporate veil may occur where those sought to be held personally liable have controlled or used the corporate form to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.

*Dana*, 587 S.E.2d at 553–54. Further, corporate subsidiaries are to be treated separately from one another, absent the following showings: (1) the dominant entity exercised undue domination and control over the subservient entity; (2) the domination and control was used to defraud and wrong the complainant; and (3) unjust loss or injury will result unless the dominant entity is held liable. *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002).

Based on the allegations in the Complaint, Williams Wharf's status as an LLC provides no protection for Ms. Hooper for two reasons. First, Ms. Hooper's solicitations on behalf of the India Venture were made on behalf of an unincorporated entity that was purportedly separate and distinct from Williams Wharf as a matter of corporate form. ECF No. 1 at ¶ 57 ("Ms. Hooper further represented that 'the company in India is a completely separate company and in no way tied to the U.S. corporation'"); *see Beale v. Kappa Alpha Order*, 64 S.E.2d 789, 797 (Va. 1951) (discussing the general principle that distinctly established corporate entities are to be understood separately from one another). Accordingly, Ms. Hooper may not utilize the liability protections provided by the Williams Wharf corporate form as a shield for her actions in furtherance of the Williams Wharf Indian subsidiary. Second, it is alleged that Ms. Hooper used her control over the Williams Wharf bank account as an instrument of her fraud against Ms. Gyetvay. Accordingly, Ms. Hooper cannot use the Williams Wharf corporate form to avoid the potential for personal liability based on a personal fraud. Because Ms. Hooper's properly alleged fraud was initiated for her own purposes or on behalf of the India Venture, but *not* Williams Wharf, the Court declines to dismiss Count I of the Complaint.

**C. The Constructive Fraud Claim**

Similar to Count I, the parties disagree on whether the Complaint states a claim of constructive fraud.

An allegation of constructive fraud must include a false representation of a material fact that was made innocently or negligently, and the injured party must be damaged as a result of their reliance upon the misrepresentation. *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Additionally, an allegation of constructive fraud requires that the defendant represented as true what is false, in such a way to induce a reasonable person to believe it, with the intent that the person will act upon the false representation. *Id.* Under no circumstances will a promise of future action support a claim of constructive fraud. *Supervalu*, 666 S.E.2d at 368.

Here, each of Ms. Hooper's representations to Ms. Gyetvay at the time Ms. Hooper solicited Ms. Gyetvay's $150,000 investment relate to the supposed future of the India Venture and the steps Defendants were taking to create a legal subsidiary of Williams Wharf in India. Further, the Complaint alleges that Ms. Hooper intentionally mislead Ms. Gyetvay about the India Venture when the investment funds were solicited, necessarily implying that Ms. Hooper was misleading Ms. Gyetvay on the *future* of any Williams Wharf Indian subsidiary at the time she solicited the $150,000 at issue. *See* ECF No. 1 at ¶ 80. These representations amount to promises of future action, which cannot support a constructive fraud claim as a matter of law. *Id*; *See Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, (1985) ("When [a promisor] makes the promise, intending not to perform [his or her] promise is a misrepresentation of *present* fact, and if made to induce the promise to act to [his or her] detriment, is actionable as an actual fraud"). Accordingly, this claim must advance as a fraud claim. *See supra* Part III.B. Therefore, Count II of the Complaint is dismissed.

**D. The Fraud by Omission or Concealment Claim**

Count III alleges that Mr. and Ms. Hooper engaged in fraud by failing to disclose Mr. Hooper's status as a convicted felon and alleged criminal activities when they solicited

9

investment funds from Ms. Gyetvay for the Williams Wharf Indian subsidiary.

Concealment of a material fact may constitute sufficient misrepresentation to maintain a fraud action. *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994). If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment constitutes fraud. *Id. citing Clay v. Butler*, 112 S.E. 697, 700 (Va. 1922); *see also Guy v. Tidewater Inv. Props.*, 1996 WL 33465397, at *3 (Va. Cir. Ct. Dec. 20, 1996) (listing the elements for fraud and constructive fraud in the discussion of a fraudulent concealment claim).

Count III advances an alternative theory for Mr. and Ms. Hooper's alleged fraud: instead of arguing that Mr. and Ms. Hooper never intended to set up a legitimate framework for the Williams Wharf Indian subsidiary, this Count surmises that Mr. Hooper's undisclosed crimes "were likely to derail all of the Hoopers' business activities." ECF No. 1 at ¶ 85. In effect, Count III seeks recovery of the same $150,000 investment in the India Venture based on a different expression of the Hoopers' bad faith. However, the Complaint does not state facts that indicate Mr. Hooper's criminal record and alleged criminal activities were material to the failure to ever set up a Williams Wharf Indian subsidiary, the supposed subject of Ms. Gyetvay's investment.

When the Hoopers travelled to India and solicited funds from Ms. Gyetvay in September and October 2019, Mr. Hooper had not been arrested or indicted on the charges pending against him. *See id.* at ¶¶ 48, 49, 53 (alleging that Mr. Hooper was arrested after the Hoopers' return from India on November 22, 2019 and indicted sometime thereafter). Based on the timeline provided in the Complaint, there was no publicly identifiable justification for the Hoopers failure to legally incorporate the Williams Wharf Indian subsidiary before November 2019. There is also no allegation that Mr. Hooper's 2014 conviction prevented the incorporation of the India

Venture as an Indian subsidiary of Williams Wharf. In other words, the Complaint contains support for the conclusion that the Hoopers intended to misappropriate Ms. Gyetvay's money at the time the solicitations for an investment in the India Venture were made, but it does not contain support for the conclusion that a legal manifestation of the India Venture failed to materialize because of Mr. Hooper's criminal history and the criminal allegations against him that are currently pending. Accordingly, the claims within Count III are somewhat inconsistent with the claims in Count I. More importantly, there is insufficient support for the materiality of Mr. Hooper's history as a federal criminal defendant relative to the alleged misappropriation of Ms. Gyetvay's investment in the India Venture. Therefore, the Count III of the Complaint fails to state a claim and must be dismissed.

**E. The Conversion Claim**

Ms. Gyetvay alleges that Defendants converted her funds because she provided them with $150,000 for a stake in the Williams Wharf Indian subsidiary but received nothing in return. *Id.* at ¶¶ 92–95.

Conversion is the taking of personal property by one person and the repudiation by that person of the owner's rights, or the exercise of dominion over the property by that person in such a way as to be inconsistent with the rights of the owner. *PGI, Inc. v. Rathe Prods., Inc.* 576 S.E.2d 438, 443 (Va. 2003). To assert a claim for conversion, a pleading must contain the following: (1) the ownership or right to possession of the property at the time of the conversion; and (2) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving the plaintiff of possession. *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659 (E.D. Va. 2001).

In this case, the Complaint concedes that Ms. Gyetvay voluntarily wired $150,000 to a

Williams Wharf bank account in exchange for a 5% stake in the Indian subsidiary of Williams Wharf and a seat on its board. ECF No. 1 at ¶ 94. It follows that Ms. Gyetvay relinquished her ownership interest and right of possession to that $150,000 at the time she wired it to the Williams Wharf account. While Ms. Gyetvay may well have been entitled to the safekeeping of her investment, an ownership stake and board position in the Williams Wharf Indian subsidiary, and to rights as an investor and board member in the Williams Wharf Indian subsidiary, she was no longer the owner or rightful possessor of the $150,000 sum that she voluntarily relinquished. Of course, Defendants' actions that caused Ms. Gyetvay to wire the $150,000 may also have been fraudulent, which is why Count I may proceed. *See supra* Part III.B; *Handberg v. Goldberg*, 831 S.E.2d 700, 709 (Va. 2019) ("the elements of conversion do not include a finding of fraud."). However, Ms. Gyetvay's voluntary relinquishment of the $150,000 at issue here prevents her from satisfying the first prong of the conversion test. Therefore, Count IV fails to state a claim and must be dismissed.

**F. The Unjust Enrichment Claim**

Similar to Count IV, Count V alleges that all Defendants were unjustly enriched because Ms. Gyetvay provided them with $150,000 in exchange for an ownership interest in the Williams Wharf Indian subsidiary, but received nothing in return.

Three elements are required to establish a claim of unjust enrichment: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006).

The Complaint clearly alleges facts that Williams Wharf received $150,000 from Ms.

Gyetvay for which she was supposed to receive a 5% ownership interest and a board seat in the Williams Wharf Indian subsidiary that never materialized. In other words, Williams Wharf received a benefit from Ms. Gyetvay in exchange for nothing due to the fraud alleged against Ms. Hooper in Count I. Williams Wharf was on notice of the benefit through communications with Ms. Gyetvay and Ms. Hooper, who directly controlled Williams Wharf's finances with Mr. Hooper. ECF No. 1 at ¶ 7. Further, the Complaint alleges that Williams Wharf never returned the $150,000 it received due to Ms. Hooper's alleged fraud. Therefore, the Complaint states a claim of unjust enrichment against Williams Wharf and its Motion to Dismiss Count V is denied.

Similarly, the Complaint raises allegations that the Hoopers were the knowing beneficiaries of the $150,000 provided by Ms. Gyetvay. From September 2019 through most of October 2019, the Hoopers took a multi-week trip to India and enjoyed "luxurious accommodations" when they were supposed to be organizing an Indian subsidiary of Williams Wharf. *Id.* at ¶¶ 34–35. The trip ended without any such Indian subsidiary and there has been no accounting for the money Ms. Gyetvay wired into Williams Wharf account that the Hoopers controlled. *Id.* at ¶¶ 65–70. In sum, the facts in the Complaint raise the inference that the Hoopers used the $150,000 provided by Ms. Gyetvay for their personal enjoyment and *not* in pursuit of any business interest in India. *See supra* Part III.B (discussing the Williams Wharf corporate veil, which does not shield the Hoopers from their alleged use of the money at issue for their personal benefit or for a nonexistent Indian business venture). Therefore, the Court declines to dismiss the Complaint's unjust enrichment claim against the Hoopers.

**G. The Securities Fraud Claim**

Count VI of the Complaint purports to state a claim for violation of the Virginia Securities Act against all Defendants.

Va. Code § 13.1-502 prohibits selling the sale of securities by means of an untrue statement or omission of a material fact, while Va. Code § 13.1-522(A) creates civil liability for the sale of a security by means of such an untrue statement or omission. *See Dunn v. Borta*, 369 F.3d 421, 425 (4th Cir. 2004) (discussing the general structure of Virginia Securities Act).

The problem with Ms. Gyetvay's claims in Count VI is simple: the allegations in the Complaint do not accuse the Defendants of selling fraudulent securities or an ownership interest in any entity; instead, the Complaint accuses the Defendants of taking $150,000 from Ms. Gyetvay in exchange for *nothing at all*. *See e.g.* ECF No. 1 at ¶¶ 66, 94, 98 (accusing Defendants of failing to provide Ms. Gyetvay *anything* in exchange for her transfer of $150,000 in support of the India Venture). Therefore, Count VI of the Complaint must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss Counts II, III, IV, and VI is **GRANTED**. The Motion to Dismiss Counts I and V is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
August 20, 2020

Raymond A. Jackson
United States District Judge